**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RAHMAT ABD HIR,
*Defendant-Appellant.*

No. 07-10500

D.C. No.
CR-07-00501-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy Fogel, District Judge, Presiding

Argued and Submitted
January 22, 2008—Pasadena, California

Filed February 15, 2008

Before: Alfred T. Goodwin, Stephen Reinhardt, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Reinhardt

1591

## COUNSEL

Barry J. Portman, Esq., Nicholas P. Humy, Esq., Cynthia C. Lie, Esq., and Mara K. Goodman, Esq., Federal Public Defender, San Jose, California, for the defendant-appellant.

Scott N. Schools, Esq., John T. Gibbs, Esq., Joanna Baltes, Esq., and Jonathan D. Schmidt, Esq., United States Department of Justice, Washington D.C., for the plaintiff-appellee.

## OPINION

REINHARDT, Circuit Judge:

Defendant, Rahmat Abd Hir, is charged with two counts of conspiring to provide and providing material support to terrorists, in violation of 18 U.S.C. § 2339A; thirteen counts of contributing goods and services to a specially designated global terrorist, in violation of 50 U.S.C. § 1705(b); and one count of making a material false statement, in violation of 18 U.S.C. § 1001. He appeals the district court's pretrial detention order denying bail. We have jurisdiction pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, and we affirm.

## I.  Factual and Procedural Background

Abd Hir is a forty-three-year-old American citizen. Born in Malaysia, where many of his immediate family members continue to reside, Abd Hir moved to the United States approximately twenty years ago and has lived in the San Francisco Bay Area for the past ten years. Abd Hir and his wife, also a United States citizen, have four young children, all of whom were born in this country. Aside from the current charges, Abd Hir has no criminal record and no history of substance abuse.

The charges in this case arise out of Abd Hir's contacts with his brother, Zulkifli Abd Hir ("Zulkifli"). Zulkifli is an acknowledged member of the Moro Islamic Liberation Front ("MILF"), a secessionist force operating in the southern Philippines, and an alleged high-ranking member of Jemaah Islamiyah, an al-Qaeda affiliated foreign terrorist organization that operates in Indonesia, the Philippines, and Malaysia. Jemaah Islamiyah is suspected of carrying out numerous deadly attacks in Southeast Asia, among them, the 2002 bombing of a nightclub in Bali that killed over 200 people and the 2004 bombing of the Australian embassy in Jakarta that killed three people and left more than 100 wounded. On Sep-

tember 5, 2003, the United States Office of Foreign Assets Control designated Zulkifli a "Specially Designated Global Terrorist," thereby making it illegal to contribute funds, goods, or services to his benefit. *See* Alphabetical List of Blocked Persons, Specially Designated Nationals, Specially Designated Terrorists, Specially Designated Global Terrorists, Foreign Terrorist Organizations, and Specially Designated Narcotics Traffickers, 69 Fed. Reg. 30,362, 30,466 (May 27, 2004).

Between June 2006 and August 2007, Abd Hir and his brother were in regular email contact. Their communications clearly show that Abd Hir knew that Zulkifli was wanted by the United States government for terrorist activities. On two occasions, Abd Hir sent emails to his brother with links to newspaper articles alleging that Zulkifli was a high-ranking member of Jemaah Islamiyah, including one that offered a five-million dollar reward for information leading to his capture. Their correspondence also makes plain that Abd Hir knew of Zulkifli's violent activities in the Philippines. During their email exchange, Zulkifli informed Abd Hir of attacks that he and his allies planned to carry out, sometimes advising Abd Hir to "check out" the next day's papers for news of the operation.

Despite this knowledge, Abd Hir consistently responded to Zulkifli's requests for money and supplies. During this time, Abd Hir sent over $10,000 to his brother using various bank accounts in the Philippines. He also sent packages, often using false names and return addresses, which included supplies ranging from candy and underwear to accessories for guns, backpacks, knives, and publications about firearms. On several occasions, Abd Hir sent his brother hand-held two-way radios. The government alleges that some of these radios were then used to make Improvised Explosive Devices ("IEDs") which were detonated in a bombing in the Philippines that left five dead and twenty-nine injured.

On August 1, 2007, the grand jury returned its sixteen-count indictment. The following day, Abd Hir was arrested and search warrants were executed at his home, office, and at a commercial storage facility that he rented. The items recovered during these searches included multiple firearms, ammunition, and military manuals on sniper training, guerilla warfare, and improvised munitions. The searches also turned up jihadist literature as well as old photographs of Abd Hir in a face mask and sunglasses posing with several assault rifles while seated on a couch with a small child.

Abd Hir's first two detention hearings were held before a magistrate judge. *See* 18 U.S.C. § 3142(e) (2006) (permitting pretrial detention only "[i]f, after a hearing . . . , the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"). With respect to flight risk, the magistrate judge concluded that any risk that Abd Hir might flee could be addressed through the imposition of conditions of release, including the posting of $600,000 real property as a surety against flight. With respect to dangerousness, the magistrate judge found that Abd Hir did not pose a danger to any person or the community within the Northern District of California. Accordingly, the magistrate judge ordered Abd Hir released pending trial. The government moved for a stay pending its appeal of the release order to the district judge.

The district judge heard argument shortly afterwards. He adopted, in part, the magistrate judge's flight risk determination and rejected his dangerousness determination. With respect to flight risk, the district judge agreed that any such risk could be addressed through conditions of release but concluded that the amount of the bond set by the magistrate judge was not sufficiently high. With respect to dangerousness, the district judge found that 18 U.S.C. § 3142(e) does not require a showing that the defendant poses a danger to a person or a community within the court's jurisdiction; he then concluded

that Abd Hir posed a danger to a community outside of the United States. Although he did not identify the community, it was quite obviously the Philippines.

The district judge requested supplemental briefing on the question of whether any condition or combination of conditions of release would reasonably assure the safety of others and of the community at issue here. After an additional oral argument and a review of the supplemental briefing, including a list of proposed release conditions, he concluded that no conditions of release would reasonably assure the safety of the community. Abd Hir was ordered detained pending trial.

Abd Hir appeals the district judge's pretrial detention order on three grounds. First, he argues that the district court erred as a matter of law in interpreting the Bail Reform Act to permit pretrial detention of an individual who poses a danger only to a community outside of the United States. Second, Abd Hir contends that even if the Bail Reform Act's definition of community encompasses foreign countries, the district court erred in finding that he poses such a danger. Third, he disputes the district court's determination that no condition or combination of conditions would reasonably assure the safety of the community.[1]

## II.   Legal Framework

**[1]** The Bail Reform Act governs the detention of a defendant pending trial. 18 U.S.C. § 3142 (2006). The Act mandates the release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and

---

[1]Perhaps because it makes a similar argument with respect to dangerousness, the government does not appeal the district court's finding that although Abd Hir poses a flight risk, a combination of conditions of release together with a sufficient bond would reasonably assure his appearance in court.

the safety of any other person and the community." 18 U.S.C.
§ 3142(e). Where, as here, there is probable cause to believe
that the defendant has committed an offense identified as a
"[f]ederal crime of terrorism" under 18 U.S.C.
§ 2332b(g)(5)(B) for which a maximum term of imprisonment
of ten years or more is prescribed, there is a rebuttable pre-
sumption that "no condition or combination of conditions will
reasonably assure the appearance of the person as required
and the safety of the community." 18 U.S.C. § 3142(e).[2]
Although the presumption shifts a burden of production to the
defendant, the burden of persuasion remains with the govern-
ment. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.
1991). A finding that a defendant is a danger to any other per-
son or the community must be supported by "clear and con-
vincing evidence." 18 U.S.C. § 3142(f)(2)(B).

If a defendant proffers evidence to rebut the presumption of
dangerousness, the court considers four factors in determining
whether the pretrial detention standard is met: (1) the nature
and circumstances of the offense charged, including whether
the offense is a federal crime of terrorism; (2) the weight of
the evidence against the person; (3) the history and character-
istics of the person, including the person's character, physical
and mental condition, family and community ties, employ-
ment, financial resources, past criminal conduct, and history
relating to drug or alcohol abuse; and (4) the nature and seri-
ousness of the danger to any person or the community that
would be posed by the defendant's release. 18 U.S.C.
§ 3142(g). *See United States v. Winsor*, 785 F.2d 755, 757
(9th Cir. 1986); *United States v. Motamedi*, 767 F.2d 1403,
1407 (9th Cir. 1985). The presumption is not erased when a
defendant proffers evidence to rebut it; rather the presumption
"remains in the case as an evidentiary finding militating

---

[2]Abd Hir is charged with providing material support to a terrorist under
18 U.S.C. § 2339A, an offense identified as a "[f]ederal crime of terror-
ism" under 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of fif-
teen years in prison is prescribed.

against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

In reviewing a district court's pretrial detention order, we must be careful to ensure that the "order is consistent with the defendant's constitutional and statutory rights." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). *See also Motamedi*, 767 F.2d at 1405 (explaining that "[t]he Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected"). We review the district court's interpretation of the term "community" in the Bail Reform Act de novo. *See United States v. Horvath*, 492 F.3d 1075, 1077 (9th Cir. 2007). The district court's factual findings concerning the danger that Abd Hir poses to the community are reviewed under a "deferential, clearly erroneous standard." *Townsend*, 897 F.2d at 994. However, in a release determination, "the conclusions based on such factual findings present a mixed question of fact and law and require the exercise of sound judgment as to the values underlying the legal principles." *Id.* Accordingly, the question of whether the district court's factual determinations justify the pretrial detention order is reviewed de novo. *Id. See also Marino v. Vasquez*, 812 F.2d 499, 509 (9th Cir. 1987).

## III. Discussion

### A.

The district judge concluded that "a finding of dangerousness [under 18 U.S.C. § 3142(e)] does not necessarily require a showing of danger to persons or to the community within a limited geographic area." Abd Hir disagrees, arguing that the district court erred as a matter of law in determining that he could be detained pending trial on the ground that he posed a danger not to the local or national community, but to a com-

munity outside of the United States.[3] Whether the Bail Reform Act permits the pretrial detention of individuals who pose a danger only to a foreign "community" is a question of first impression.

[2] The statutory language itself provides little in the way of an answer. Section 3142(e) does not define the term "community." Nor do dictionaries provide us with any assistance; their definitions of the term range from "[a] neighborhood, vicinity, or locality," BLACK'S LAW DICTIONARY 273 (7th ed. 1999), to "[a] society or group of people with similar rights or interests," *id.*, and "society, in general; the public," WEBSTER'S NEW WORLD DICTIONARY 282 (3d ed. 1988). *See, e.g.*, *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) ("When a statute does not define a term, a court should construe that term in accordance with its 'ordinary, contemporary, common meaning.' ") (quoting *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1146 (9th Cir. 2003)). Rather, the term "community" is amorphous; thus, we are required to look beyond the plain text of the statute in our attempt to determine its meaning for purposes of Section 3142(e) of the Bail Reform Act.

---

[3]The district judge's determination was explicitly based on the danger that Abd Hir posed to the community, rather than to any person outside of the United States. He found, and we agree, that "there is no evidence that [Abd Hir] has threatened or poses a danger to any specific individual[,]" as is required for a determination that an individual poses a danger to "any other person" under 18 U.S.C. § 3142(e). *See* S. REP. NO. 98-225, at 12 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 (explaining that "[t]he reference to safety of any other person [in § 3142] is intended to cover the situation in which the safety of a particular identifiable individual . . . is of concern"). Although the question of whether "any other person" may be located outside of the United States is not before us, we note that at least one court has concluded that whether "the defendant will . . . pose a danger . . . to other persons, *whether here or abroad*" is a proper consideration in assessing an individual's dangerousness under the Bail Reform Act. *United States v. Mazloum*, No. 3:06CR719, 2007 WL 2778731, at *5 (N.D. Ohio Sept. 4, 2007) (emphasis added).

The judges below, and the parties before us, offer several possible resolutions to our query. We address each in turn. We first reject the magistrate judge's view that the term "community" in Section 3142(e) of the Bail Reform Act is limited to a geographic location within the court's jurisdiction. Limiting the definition of community to the jurisdiction in which the crime occurred, in this case the Northern District of California, would lead to arbitrary and absurd results. We refuse to direct a court assessing the dangerousness of a defendant charged with the armed robbery of a bank in Los Angeles that it may not take into account the risk that the defendant, if released before trial, would rob a bank in San Diego or Bakersfield. Similarly, requiring a court in the Eastern District of New York, which includes one part of New York City, to ignore the threat posed by an alleged narcotics dealer to the community in the state's Southern District, which covers another part of that city, would not only be illogical but irresponsible. It would likewise be absurd to hold that a court in Florida must ignore the danger that an individual accused of defrauding susceptible persons in that state may pose to residents of Oregon.

Nor would it make sense to conclude, as Abd Hir argues, that the relevant community must be a community located within the geographic bounds of the United States.[4] Where, as

---

[4]For this argument, Abd Hir relies on our decision in *Townsend*, 897 F.2d at 995. In that case, we considered the meaning of the term "community" for purposes of determining what "community ties" may be considered under § 3142(g) of the Act in assessing whether a defendant poses a flight risk. *Id*. We concluded that " 'community' in [§ 3142(g)] embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *Id*. Abd Hir argues that, following *Townsend*, we should define "community" to extend only to a place within the United States. We disagree. The scope of analysis permitted in determining a defendant's community ties for purposes of assessing the likelihood of flight risk has no bearing on the "safety of the community" analysis for purposes of assessing likelihood of dangerousness. *See, e.g.*, S. REP. NO. 98-225, at 24, *as reprinted in* 1984

here, a defendant is charged with an offense that had a significant adverse effect on a community abroad, we see no justification for preventing a court, for bail purposes, from considering the continuing risk to that community that might be posed by the defendant's pre-trial release.

**[3]** For the purpose of resolving the case before us, we need not adopt a general rule governing the scope—geographic or otherwise—of the term "community" in Section 3142(e) of the Bail Reform Act. We need decide only whether a court making a bail determination may consider the threat that a defendant poses to a foreign community in a case in which the defendant has been charged with an offense under American law, the effect of which occurs abroad. Along with the district judge, we conclude that it may. Any other interpretation would lead to an incongruous result: a court would be able to try a defendant under the laws of the United States for a crime the effects of which are felt abroad, but be unable to detain the defendant who committed the crime despite clear and convincing evidence that he continues to pose a danger to the same foreign community.

---

U.S.C.C.A.N. at 3207 (noting that "with respect to the factor of community ties . . . this factor . . . has no correlation with the question of the safety of the community"). Therefore, *Townsend*'s conclusion as to the meaning of the term "community" in § 3142(g) does not affect our result here.

In the alternative, Abd Hir argues that danger to a community outside of the United States should only be considered to the extent that the potential threat is directed at American citizens. We find this argument to be both impracticable and unpersuasive. Defining the term "community" to include Americans abroad, but not those of other nationalities, would place courts in the untenable position of having to predict the nationalities of the victims to whom a defendant might pose a danger if he is released. Such an inquiry would likely be futile given the widespread presence of American tourists, business travelers, expatriates, and military personnel across the globe. It also raises disturbing questions about the relative value of the lives of Americans and non-Americans. We cannot imagine that the statute requires courts to make such determinations and refuse to interpret § 3142(e) in a manner that demands that we do.

**[4]** Here, Abd Hir is charged with providing material support in order to further the commission of terrorist activities in the Philippines. Although the threat in this case is posed to a foreign community, it is an offense that is punishable under the laws of the United States. Because the district court has the authority to try Abd Hir under American law for a crime that allegedly resulted in grave harm to residents of the Philippines, we find no justification for preventing it from considering the continuing threat that Abd Hir would pose to that community if he were released pending trial. We hold that, under these circumstances, a court required to make a dangerousness determination under Section 3142(e) may consider whether the defendant would pose a danger to a foreign community. Accordingly, we find no error in the district judge's decision to consider the danger that Abd Hir would pose to the Philippines if released pending trial.[5]

Our holding comports with the history and purpose of the Bail Reform Act of 1984 ("1984 Act"). The predecessor of the 1984 Act, the Bail Reform Act of 1966 ("1966 Act"), allowed judges making pretrial detention determinations to consider only whether the offense committed was punishable

---

[5]The decision of at least one district court is in accord with our own. In *United States v. Al-Arian*, 280 F. Supp. 2d 1345 (M.D. Fla. 2003), four defendants were charged with conspiracy to provide material support to a designated terrorist organization, the Palestinian Islamic Jihad ("PIJ"). *Id*. at 1350. The court found that two of the four defendants posed a "danger to the community" and that it could not "fashion any conditions that will reasonably conform their behavior." *Id*. at 1357. The precise "community" at risk was not specified but the court's discussion reveals that the PIJ engaged in acts of violence abroad, explaining that the organization "advocates the destruction of Israel, the elimination of Western influence, particularly from the United States, in the region, and the creation of an Islamist state." *Id*. at 1348 (noting that "[t]he PIJ killed over a hundred in Israel and the occupied territories during the period referenced in the indictment. It maimed many more. The roll call of dead and wounded included Americans."). The *Al-Arian* court, then, also considered the danger that defendants might pose to a community abroad, although it happened to include some Americans.

by death or whether the accused posed a flight risk; it did not
allow judges to consider the dangerousness of a defendant
when making a bail determination. Pub. L. No. 89-465, 80
Stat. 214, 214 (1966). The current statute, the Bail Reform
Act of 1984, was enacted, in large part, to address growing
concern that dangerous defendants were committing crimes
while released on bail. In passing the 1984 Act, Congress crit-
icized the earlier statute for "fail[ing] to grant the courts . . .
the authority to deny release to those defendants who pose an
especially grave risk to the safety of the community." S. REP.
No. 98-225, at 5 (1983), *as reprinted in* 1984 U.S.C.C.A.N.
3182, 3188. Congress explained that the "broad base of sup-
port for giving judges the authority to weigh risks to commu-
nity safety in pretrial release decisions is a reflection of the
deep public concern, which the Committee shares, about the
growing problem of crimes committed by persons on release."
*Id.*

Congress, then, enacted the Bail Reform Act of 1984 with
the explicit purpose of ensuring that courts would consider the
danger posed by releasing a defendant on bail. Our holding
accomplishes just that: it enables the court to consider the
nature of the crime with which a defendant is charged and the
danger that if he were released he would commit similar
crimes again.

**[5]** In sum, we conclude that a court making a pretrial
release determination under Section 3142(e) of the Bail
Reform Act may, at least under the circumstances present
here, consider the danger that a defendant poses to a foreign
community. Where a defendant is charged with committing a
crime under United States law that had a substantial harmful
effect on a community overseas, we hold that a court should
consider the danger that would be posed to that community if
the defendant were released pending trial.

**B.**

Having concluded that the district judge properly consid-
ered harm to a foreign community in making his dangerous-

ness determination, we turn to Abd Hir's second ground for appeal. Abd Hir next argues that the district court erred in finding that he posed a danger to the community despite the fact that he had no prior criminal or violent history. We disagree.

**[6]** The district judge made extensive, well-reasoned findings with respect to each of the four statutory factors set forth in 18 U.S.C. § 3142(g). Although we "make an independent examination of the facts, the findings, and the record to determine whether the pretrial detention order" is proper, in this case, we have no difficulty in agreeing with the district judge's conclusion that Abd Hir poses a danger to the community. *Motamedi*, 767 F.2d at 1405. Three of the four statutory factors weigh strongly in favor of this conclusion. First, "the nature and circumstances of the offense[s] charged," are extremely serious. 18 U.S.C. § 3142(g)(1) (specifically requiring the court to consider whether the offense is "a Federal crime of terrorism"). The indictment alleges that Abd Hir, acting with full knowledge of Zulkifli's designation as a Specially Designated Global Terrorist and of the nature of his violent activities, sent both money and supplies to his brother in support of those activities. If convicted, Abd Hir faces up to 298 years in prison.

**[7]** Second, "the weight of the evidence against" Abd Hir is considerable. 18 U.S.C. § 3142(g)(2). We recognize that "the weight of the evidence is the least important of the various factors." *Motamedi*, 767 F.2d at 1408 (explaining that "the statute neither requires nor permits a pretrial determination that a person is guilty"). Nevertheless, the statute requires that we consider the evidence "in terms of the likelihood that [Abd Hir] . . . will pose a danger." *Id*. We conclude that the weight of the evidence clearly and convincingly establishes such a likelihood. The evidence that we consider in arriving at this conclusion includes email correspondence between the brothers which tends to establish Abd Hir's knowledge of his brother's ties to a terrorist organization, the nature of Zulki-

fli's activities in the Philippines, and Abd Hir's willingness to send money and material support in furtherance of those activities; Abd Hir's admissions to the FBI that he knew that his brother was a wanted terrorist and that he regularly exchanged emails with his brother in which Zulkifli sought money and supplies for his activities;[6] and a large cache of firearms and ammunition found in searches of Abd Hir's residence and rented storage facility, as well as military manuals on sniper training, guerilla warfare, and improvised munitions.[7] The second statutory factor, then, also weighs in favor of a finding of dangerousness.

[8] Third, "the nature and seriousness of the danger to . . . the community that would be posed by [Abd Hir's] release" is significant. 18 U.S.C. § 3142(g)(4). As we have previously indicated, given the nature of the charges, we consider the danger that Abd Hir poses to the community, at home or abroad, that would likely be at risk if he were released. In this case, that community is the Philippines. We conclude that the evidence proffered by the government clearly and convinc-

---

[6]The parties dispute whether Abd Hir admitted to the FBI, during its eight hour interrogation, that he knew that at least some of the two-way radios he sent to his brother were intended for use as IEDs. The record of the interrogation that is before us is susceptible to differing interpretations. However, even assuming that Abd Hir made no such admission, there is strong evidence contained in the brothers' email correspondence that Abd Hir knew that the radios were used to make bombs.

[7]The searches also uncovered jihadist literature as well as photographs of Abd Hir in a face mask and sunglasses posing with several assault rifles while seated on a couch with a small child. We agree with the district judge that these two pieces of evidence should be given "little weight" in assessing Abd Hir's dangerousness. The government concedes that it is unsure whether the jihadist literature actually belongs to Abd Hir; also, our Constitution affords individuals the right to read such materials free of intrusion or penalty. In this case, given all the circumstances, we do not believe that the possession of the literature is probative as to Abd Hir's state of mind or his attitude toward terrorism. The photographs are allegedly nine years old and therefore are of limited value in determining Abd Hir's current propensity for violence.

ingly establishes Abd Hir's willingness to send money and
supplies to his brother, knowing that these materials will be
used in support of violent activities that pose a serious danger
to the Philippines, including the indiscriminate bombing of
civilians. We therefore conclude that this factor also weighs
in favor of a finding of dangerousness.

The remaining statutory factor weighs against a finding of
dangerousness. Abd Hir's "history and characteristics" reflect
that he was a law-abiding citizen prior to his alleged commis-
sion of the charged offenses and that he maintains significant
ties to his local community. 18 U.S.C. § 3142(g)(3). Although
Abd Hir was born in Malaysia, and many of his family mem-
bers still reside there, he has lived and worked in the United
States for approximately twenty years. He holds undergradu-
ate and graduate degrees from Arizona State University, is
married to a United States citizen, is the father of four chil-
dren all of whom were born in the United States, and was sup-
ported at his court appearances by friends and family
members, several of whom were willing to act as sureties for
his release. Abd Hir has never before been charged with a
crime, nor does he have any history of violence or substance
abuse.

[9] We have given these positive personal attributes serious
consideration. We are not persuaded, however, that they over-
come the strength of the factors pointing to Abd Hir's danger-
ousness. *See, e.g.*, *Rodriguez*, 950 F.2d at 89 (explaining that
"[a]lthough a prior record of violence eases the government's
burden of showing dangerousness, it is not essential").[8] We

---

[8]Although each case requires a fact-specific inquiry into the potential
danger posed by the individual defendant, we note that at least two district
courts reached similar conclusions in cases in which defendants with no
criminal history and strong community ties were accused of crimes involv-
ing terrorism. *See United States v. Goba*, 240 F. Supp. 2d 242, 257-58
(W.D.N.Y. 2003) (finding that "each individual defendant's background
is significantly outweighed by the . . . danger to the community that each

conclude that Abd Hir's history as a law-abiding citizen and his significant ties to the local community do not outweigh the extremely serious nature of the offenses with which he is charged, including his willingness to provide dangerous materials for use against civilians, while attempting to disguise his role in the affair, the weight of the evidence against him, and the nature and gravity of the danger that would be posed by his release. The district judge's finding of dangerousness is well-supported and we affirm its determination.

### C.

Our inquiry is not yet complete. Even where a defendant poses a danger, he must still be released if there is a "condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e).[9] In the present case, Abd Hir and the Office of Pretrial Services propose an extensive list of release conditions. The district judge concluded that neither the proposed conditions, nor any other combination of conditions, would reasonably assure the safety of the community. We agree.

The release conditions proposed by Abd Hir and Pretrial Services include: (1) a ban on the possession of any firearms

---

poses as a result of . . . his attendance and training at al-Qaeda's al-Farooq terrorist training camp"); *Al-Arian*, 280 F. Supp. 2d at 1355-57 (describing defendants charged with various violent crimes and providing material support to a designated terrorist organization as "models of civic involvement in their respective communities" but nevertheless concluding that two of four defendants "pose a danger to the community").

[9]We note that the Bail Reform Act contemplates only that a court be able to "reasonably assure," rather than guarantee, the safety of the community. *See United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed . . . . Requiring that release conditions *guarantee* the community's safety would fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention.") (emphasis in original).

or ammunition, (2) a ban on communication with Zulkifli or anyone else in the Philippines, without the permission of Pretrial Services, and the provision of a copy of Abd Hir's telephone bill upon request, (3) a ban on communication with any Specially Designated Global Terrorist, (4) monitoring of Abd Hir by means of global positioning satellite, (5) a ban on the use of the Internet outside of work or for non work-related purposes,[10] (6) a requirement that Abd Hir report to Pretrial Services once a week, (7) a ban on the sending of money overseas without the permission of Pretrial Services, (8) a ban on the sending of packages overseas without the permission of Pretrial Services, and on the use of any false names or addresses, and (9) the surrender of all passports and travel documents not already seized by the Government.

Although these proposed conditions of release are strict, they contain one critical flaw. In order to be effective, they depend on Abd Hir's good faith compliance. *See Tortora*, 922 F.2d at 886 (concluding that a similarly extensive set of release conditions contained "an Achilles' heel . . . virtually all of them hinge on the defendant's good faith compliance"). In *Tortora*, the First Circuit considered what conditions, if any, would mitigate the danger posed by the release of an alleged member of a prominent Mafia family, charged with several violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute. *Id*. at 882. In that case, the district court ordered Tortora's release under a strict set of release conditions similar to those proposed by Abd Hir, including restrictions on his communications with any person not approved by counsel, monitoring of his home phone through a pen register, and twenty-four hour house arrest, except for visits to doctors and lawyers, when he would be required to wear an electronic bracelet. *Id*. Despite this elaborate set of conditions, the First Circuit reversed, reasoning that

---

[10]At oral argument, counsel informed the court that Abd Hir is no longer employed. As a result, under the proposed conditions, Abd Hir would not be permitted to access the Internet under any circumstances.

"the conditions as a whole are flawed in that their success depends largely on the defendant's good faith—or lack of it. They can be too easily circumvented or manipulated." *Id.* at 887.[11]

**[10]** As in *Tortora*, the effectiveness of the proposed release conditions, or any conditions that might be imposed, necessarily depends on Abd Hir's good faith compliance. This is particularly the case because of the nature of the crimes with which Abd Hir is charged: crimes that involve communications and that are therefore not readily susceptible to effective monitoring. For example, a representative from the Office of Pretrial Services conceded that it would not be feasible to monitor all of Abd Hir's telephone calls, his use of a laptop brought into his home, and any activity taking place through unknown bank accounts that could be accessed by a phone call or a computer. At oral argument, the government contended that under the proposed conditions, it would not be possible to detect whether Abd Hir asked a family member or friend to send money or a package to his brother. In short, the conditions here, as in *Tortora*, may be "easily circumvented or manipulated." *Id.*

The question then is whether Abd Hir would comply in good faith with the proposed, or any other, conditions of release. We conclude that there is an unacceptably high risk that he would not.[12] The evidence before us clearly and con-

---

[11]The First Circuit pointed to several examples of how such manipulation might occur, many of which are applicable in Abd Hir's case as well. The court explained that electronic monitoring does not prevent a defendant from committing crimes within the monitoring radius, that there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions, and that phone monitoring could be evaded by use of cellular and pay phones. *Id.* at 887.

[12]In reaching this conclusion, we note that, in this respect, the present case is quite distinguishable from *Tortora*, where the defendant had a long history of violent criminal activity. 922 F.2d at 887 (explaining that "little

vincingly points to Abd Hir's willingness to provide material assistance to his brother with full knowledge of Zulkifli's alleged terrorist affiliations and violent activities in the Philippines. It defies common sense to believe that Abd Hir did not know that his provision of money and supplies to his brother under these circumstances was illegal. *See, e.g.*, *Al-Arian*, 280 F. Supp. 2d at 1357 (relying on defendants' "tenacious[ ] loyal[ty]" and provision of support to a terrorist organization despite knowledge of the organization's illegal activities in concluding that the court "cannot fashion any conditions that will reasonably conform their behavior"). Indeed, Abd Hir's alleged use of false names and addresses when sending packages and his use of multiple bank accounts for money transfers tend to show that he knew that what he was doing was wrong. *See id.* at 1352 (explaining that Al-Arian "avoided using his home telephone, instructed others to be careful, or used coded terms to conceal the subjects of conversations" in order to hide his involvement with a terrorist organization). On this record, it is difficult to imagine that Abd Hir did not know the seriousness of his offenses and the gravity of their consequences—both in terms of the harm that was being done to others and the penalties that he faced for his involvement. Nevertheless, Abd Hir persisted.

**[11]** Given the strength of this evidence, coupled with the statutory presumption that no conditions of release will reasonably assure the safety of the community where a defendant is charged with a federal crime of terrorism, we agree with the district judge that there is an unacceptably high risk that Abd

---

about the defendant or his history suggests that good faith will be forthcoming. If past is prologue, then promises to hew the straight and narrow will mean next to nothing to this defendant"). Abd Hir, by contrast, has no criminal history. Nevertheless, as we discuss *supra*, his demonstrated commitment to providing aid to his brother, knowing of Zulkifli's terrorist designation and violent activities, and the risk that he himself was taking, leads us to conclude that despite his otherwise law abiding history, Abd Hir cannot be expected to comply in good faith with release conditions.

Hir would not comply in good faith with the proposed conditions, or any other combination of release conditions, imposed upon him.[13] Accordingly, we conclude that "no condition or combination of conditions will reasonably assure . . . the safety of . . . the community." 18 U.S.C. § 3142(e).

## IV.   Conclusion

The sensitive and serious nature of the offenses with which Abd Hir is charged require our most careful and objective review. As the district judge explained,

> There is a delicate balance between doing what is necessary to protect a democratic society from terrorism and protecting the individual rights that make that society democratic. A criminal defendant does not lose or suffer a diminution of his . . . constitutional rights merely because he . . . is accused of providing material assistance to terrorists; in every case . . . there must be an individualized, fact-specific inquiry.

Having performed that inquiry here, we conclude that there is clear and convincing evidence that Abd Hir poses a grave danger to the Philippines (if not to other communities in Southeast Asia) and that "no condition or combination of conditions will reasonably assure . . . the safety of . . . the community." 18 U.S.C. § 3142(e). We therefore affirm the district court's pretrial detention order.

---

[13]Abd Hir argues that if the proposed conditions are insufficient to reasonably assure the safety of the community, the court should attempt to fashion appropriate conditions. This argument fails to recognize that any set of conditions, short of creating a "replica detention facilit[y]," would necessarily hinge on Abd Hir's good faith compliance. *Goba*, 240 F. Supp. 2d at 258 (concluding that "[h]ere, defending against the danger that each of these four men present would require institution of four replica detention facilities, a measure not required by the caselaw").

1614                     UNITED STATES v. ABD HIR

**AFFIRMED.**